**JANG DAO THEUNG v. NAGLE, Commissioner of Immigration.**

(Circuit Court of Appeals, Ninth Circuit. January 7, 1924.)

No. 4053.

Aliens ⊜⊐32(9)—Hearing of Chinese applicant for entry held fair, and denial not abuse of discretion.

Denial of right of entry to a Chinese person *held* not an abuse of the discretion of the immigration officers, in view of the evidence, and the hearing not unfair.

Appeal from the District Court of the United States for the First Division of the Northern District of California; John S. Partridge, Judge.

⊜⊐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Petition of Jang Dao Theung against John D. Nagle, Commissioner of Immigration for the Port of San Francisco, for writ of habeas corpus. From a denial of the writ, petitioner appeals. Affirmed.

The appellant applied for admission to the United States as the minor son of Jang Sing, known also as Jang Wey Ming, a domiciled Chinese merchant. The application was denied for lack of proof of the alleged relationship. The petition of the appellant, presented to the court below for writ of habeas corpus, was denied. The petition alleged that on the hearing before the Commissioner of Immigration and the Secretary of Labor the evidence that the applicant was the merchant's minor son was so conclusive that to refuse to be guided thereby was abuse of the official discretion vested in said officers, and that the hearing was unfair, in that the denial of the application was based upon the assumed fact that Jang Sing had testified on November 18, 1911, that he was not married, and had never been married, and that he was given no opportunity to admit or deny such former testimony, or explain the same, and that although the Secretary of Labor thereafter, in consequence of a petition for rehearing and affidavits of certain Chinese witnesses, directed that the said witnesses be examined, and that Jang Sing be re-examined touching his said prior declarations, and such re-examination was had, and such testimony was thereafter taken, yet the proceeding was unfair, in that the rehearing was directed, not because of the belief that injustice had been done in the prior proceeding, but because of a recent decision of the District Court in the case of Ex parte Low Joe, 287 Fed. 545, and the apprehension of the officials that, upon a petition for habeas corpus, the court would hold that the failure to examine Jang Sing as to the discrepancies of his former testimony was evidence of an unfair hearing, and that the only purpose of reopening the case was to prevent the appellant from applying for writ of habeas corpus.

George A. McGowan and John L. McNab, both of San Francisco, Cal., for appellant.

John T. Williams, U. S. Atty., and Alma M. Myers, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). Jang Sing, the alleged father of the appellant, on November 18, 1911, then a laborer and about to leave California for a visit to China, was examined, and he testified that he had no other name than Jang Sing, and was never known by any other name. To the question "Are you married?" he answered, "No," and to the question "Were you ever married?" he answered, "No." If he had never been married before 1911, he could not have been the father of the appellant, for his claim to that relationship depended on his testimony that in the year 1907 he went from California to China as a Chinese merchant under the name Ah Fook, and was married in January, 1908, and returned therefrom on September 27, 1908, and that the appellant was born January 12, 1909. Upon the rehearing of the case, Jang Sing explained his testimony given in 1911 by saying that he supposed the questions propounded to him at that time were intended to ascertain whether he had a wife living in the United States. He said that he was advised by the Chinese interpreter that, to go home to China as a laborer, he either had to have a wife and family in the United States, or have $1,000 worth of property or debts. "As I did not have a wife or family in the United States, I said, 'No.'" In view of the very positive manner in which Jang

Sing had testified that he was not married, and had never been married, it can hardly be said as a matter of law that the immigration officers ought to have credited the explanation.

Further discredit was cast upon his testimony by the discrepancies in the evidence of the Chinese witnesses, who on the rehearing were called to prove his marriage and his relationship to the appellant. These witnesses were the affiants to the affidavits which were filed in support of the petition for rehearing. Wong Lim Yung in his affidavit stated that he last returned from China on April 19, 1914, by the Manchuria; that while in China he saw the appellant, the "minor son of Jang Sing, and is able to identify him." When he gave his testimony some eight months later, he testified that he went to China in 1918, and returned therefrom in September, 1919, and that the first time he ever saw the appellant was on June 13, 1918. A second witness, Hong Gong Chong, made affidavit that a great many years ago he had visited Jang Sing's home in China, and had seen the appellant as a baby, and his mother, and that he had not seen the mother or the appellant·for a number of years. When he came to testify, he said that he had made two trips to China; that the first was made when he was three years old, and that he returned in 1896; that he went the last time in November, 1921, and returned in October, 1922; that on that occasion he did not visit Jang Sing's home, but met his wife in the streets. "She told me that her eldest son, Jang Dao Theung, had come to the United States, and that she had not heard whether he was with his father." He .testified that he could not identify the appellant's photograph, because "I do not know that I. ever saw him." Sam Yick and his wife Lee Jen, joined in an affidavit stating that while they resided in China they frequently visited the home of Jang Sing, and saw him and his wife there upon many and frequent occasions. But Sam Yick testified that in November, 1907, he and his wife had passage to China on the same boat with Jang Sing, then traveling under the name of Ah Fook, and that they returned in April, 1910, and they had not since been in China; that he was present at the wedding of Jang Sing, but had never visited his home thereafter.

We are unable to find in the record proof that the hearing before the immigration officers was unfair. The Commissioner of Immigration, in his first decision on the appeal, said:

"Inasmuch as the alleged father testified unequivocally under oath in 1911, and the attorney at the port, in the present case, who had an opportunity to and did review the record, made no request for examination of the alleged father regarding his 1911 testimony it is not believed that .disposition of the case should be delayed for that purpose, particularly as the alleged father is in Los Angeles, and is not available for examination at Angel Island."

But later the decision in Ex parte Low Joe (D. C.) 287 Fed. 545, was brought to the attention of the Commissioner, and he telegraphed to the immigration service at San Francisco that, if that case was similar to the Jang Dao Theung Case, the latter should be stayed pending further orders. In answer to that the Commissioner at San Francisco telegraphed:

"In view of the father not being confronted with his prior declaration, and the incident probability of habeas corpus proceedings being instituted, the

court officer suggests reopening of the case for the taking of the evidence of such additional witnesses as the interested parties may desire to submit, and confronting of alleged father with his prior declaration, and this office accordingly so recommends."

The Low Joe Case, it may be observed, is quite dissimilar to the case at bar. It does not hold, and it is not authority for the proposition, that a hearing is unfair from the mere fact that a witness is not questioned regarding his inconsistent prior testimony. But the immigration officers, being in doubt on that question, acted prudently in reopening the examination. We think the record here may be searched in vain for evidence that the immigration officials, by their manner of conducting the investigation, deprived the appellant of any substantial right, or indicated an unfair or prejudiced attitude toward his application. In the end the appellant received the benefit of all the evidence he could adduce tending to establish his right to enter the United States. It was within the power vested in the officials to determine the value of that testimony, and it is very clear that the evidence of the alleged relationship of the appellant to his alleged father was not so conclusive that to refuse to be guided by it was abuse of discretion.

The judgment is affirmed.